UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/20/13

-------------------------------------------------------X
                        :

BARBARA MCCOY,
                         :

              Plaintiff,  :

                         :       No. 11 Civ. 2689 (RA)

        -v-             :

                         :       <u>OPINION AND ORDER</u>

PEOPLE CARE INC.,
                         :

             Defendant.  :

                         :
-------------------------------------------------------X

RONNIE ABRAMS, United States District Judge:

Plaintiff Barbara McCoy brings this action against Defendant People Care Inc. ("People Care") alleging that People Care discriminated against her on the basis of her mental disabilities and arrest and conviction record in violation of federal and state law. People Care moves for summary judgment on all of McCoy's claims. For the following reasons, People Care's motion is granted.

## I.    Background

### A.    Factual Background[1]

People Care provides in-home personal care and nursing services in the New York City area. (Def. 56.1 ¶ 4.) People Care's client population consists of elderly, chronically ill, recuperating and/or disabled persons. (Id. ¶ 5.) Home Health Aides employed by People Care are responsible for providing the necessary care to People Care's clientele. (Id. ¶ 6.) Their responsibilities include carrying out visiting nurses' medical treatment instructions, such as

---

[1]    The following facts are drawn from People Care's Rule 56.1 statement ("Def. 56.1") and the exhibits incorporated therein. McCoy did not submit a responsive Rule 56.1 statement as required by Rule 56.1(b) of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York. Accordingly, all material facts set forth in People Care's statement "will be deemed to be admitted" as long as they are supported in the record. Loc. Civ. R. 56.1(c); Giannullo v. City of N.Y., 322 F.3d 139, 140-43 (2d Cir. 2003).

ensuring that patients take their prescribed medications.  They also provide companionship and comfort to their clients, as well as attend to the basic needs of clients who are often in vulnerable positions and unable to manage the most basic tasks themselves.  (Id. ¶ 7.)  This includes bathing, preparing meals, doing laundry, housekeeping, shopping, feeding, and taking the temperature and pulse of clients who are often very ill, confined to their beds and/or otherwise immobile.  (Id. ¶ 8.)  Because Home Health Aides provide these services in an unsupervised setting, it is imperative to People Care that its Home Health Aides are responsible individuals capable of following instructions and possess the appropriate temperament, personality traits, interpersonal skills and patience necessary to properly care for their clients.  (Id. ¶¶ 9-10.)

People Care regularly interviews and hires individuals for Home Health Aide positions. (Id. ¶ 11.)  Applications for the position are completed in-person at People Care's office.  (Id. ¶ 13.)  When an applicant arrives at its office, a receptionist provides the applicant with an application packet and assistance in completing the application, if necessary.  (Id. ¶ 15.)  As part of the application process, each applicant must take an English proficiency test and agree to be subjected to a background check.  (Id. ¶ 17.)  Only if the applicant passes the English proficiency test and his/her application and background check are suitable for the position is an interview conducted.  (Id. ¶ 17.)  When People Care receives an application from an individual with a conviction record—a question that must be answered on the application—the application is not automatically rejected.  (Id. ¶ 35.)  Instead, if the application is selected to proceed, it is then reviewed by the Senior Vice President who assesses whether there is a direct relationship between the criminal conviction and the employment responsibilities of the position sought by the applicant, or whether employing the applicant would involve an unreasonable risk to the health, safety, welfare and/or property of a client.  (Id. ¶¶ 35-36.)  People Care estimates that it

receives dozens of applications on any given day. (Id. ¶ 14.)

On November 25, 2009, McCoy visited People Care's office to fill out an application for a position as a Home Health Aide. (Id. ¶ 20; Gail Adams Aff., Jan. 22, 2013 ("Adams Aff."), Ex. A.) Janet Salcedo, a receptionist at People Care, assisted McCoy and provided her with the employment application forms. (Def. 56.1 ¶ 21; Adams Aff. Exs. B & C.) On the application, McCoy wrote that she has back pain and high blood pressure; there is no mention of her suffering from bipolar disorder, anxiety or depression. (Def. 56.1 ¶¶ 28-29; Adams Aff. Ex. A.) McCoy acknowledged in her application that she had been convicted of a violation and two misdemeanors. (Def. 56.1 ¶ 34; Adams Aff. Ex. A at 1, 9 ("harassment and trespassing [and] intent to [sell] imitation crack").) McCoy also indicated that she was not a U.S. Citizen or an alien lawfully permitted to work in the United States, (Def. 56.1 ¶ 32; Adams Aff. Ex. A), although McCoy now asserts that this was in error, (Barbara McCoy Aff., Feb. 21, 2013, ¶ 11).

The forms McCoy had completed were illegible and Salcedo thus asked her to rewrite the application. In response, McCoy became uncooperative and did not follow instructions. (Def. 56.1 ¶ 22; Adams Aff. Exs. B & C.) She made loud negative comments about the application process which rose to the level of interfering with and disturbing other applicants and employees of People Care. (Def. 56.1 ¶ 23.) Based on her observations of McCoy's demeanor, disruptive behavior and inability or willingness to follow directions, Salcedo made a determination that McCoy was not suitable for employment as a Home Health Aide and should not be interviewed. (Id. ¶¶ 24-25; Adams Aff. Exs. B & C.) Her notes from November 25, 2009 reflect the following: "Applicant not following instruction. Not Appropriate to be hire[d] or train[ed]." (Adams Aff. Ex. B.) Accordingly, on December 4, 2009, People Care mailed a rejection letter to McCoy informing her that she was not selected for training or employment as a Home Health

Aide.  (Def. 56.1 ¶ 27; Adams Aff. Ex. D.)  Because McCoy's application was rejected due to her behavior while completing her application, it never reached the later stage of the application process; no background check was performed, the Senior Vice President did not review her convictions and she was not interviewed.  (Def. 56.1 ¶¶ 37-38.)

Soon after receiving the rejection letter, Irina Evmenenko, People Care's Director of Personnel, received a call from McCoy regarding the rejection letter.  (Id. ¶¶ 41-43.)  When McCoy angrily questioned Evmenenko regarding why she was not hired, Evmenenko responded that it was the company's policy not to disclose the reasons why someone is not hired.  (Id. ¶ 44; Def. Ex. F.)  McCoy then became belligerent and loud and started yelling inappropriate comments, including foul language.  (Def. 56.1 ¶ 45; Def. Ex. F.)  She hung up the phone before Evmenenko could respond.  (Def. 56.1 ¶ 45; Def. Ex. F.)  A few days later, McCoy came to People Care's office, demanding to speak to a supervisor.  (Def. 56.1 ¶¶ 46-47.)  Evmenenko took McCoy into her office and reminded her that she could not disclose the reason why her application was denied.  (Id. ¶ 50.)  As Evmenenko was preparing to locate McCoy's personnel file, McCoy suddenly stood up, made threatening remarks and burst out of the office.  (Id. ¶ 51.)  Evmenenko's personal observations of McCoy's demeanor, temperament and inappropriate behavior confirmed that McCoy was not a suitable candidate for employment as an unsupervised Home Health Aide.  (Id. ¶ 53; Def. Ex. F.)

On December 22, 2009, McCoy filed a Charge of Discrimination with the New York State Division of Human Rights ("NYSDHR") against People Care in which she alleged that she was "discriminated against and not hired because of [her] disability, arrest and conviction record."  (Def. 56.1 ¶ 54; Maurizio Savoiardo Decl., Jan. 22, 2013, Ex. G.)  People Care responded on February 2, 2010, denying the allegations and asserting that McCoy was not hired

because of her behavior while completing the application.  (Def. 56.1 ¶ 56; Savoiardo Decl. Ex. H.)  On December 14, 2010, after conducting an investigation, the NYSDHR issued its decision that there was "no probable cause to believe that [People Care] has engaged in or is engaging in the unlawful discriminatory practice complained of."  (Def. 56.1 ¶¶ 57-58; Savoiardo Decl. Ex. I at 1.)  The NYSDHR found "a lack of evidence in support of [McCoy's] allegations of discrimination based on disability and arrest/conviction record."  (Def. 56.1 ¶ 59; Savoiardo Decl. Ex. I at 1.)  The NYSDHR determined that "the record suggests that [People Care] failed to hire [McCoy] for the non-discriminatory reason that they found her disruptive and rude, and because she had difficulty following instructions . . . [and that McCoy] would not be able to work well with [People Care's] infirm and injured clientele, and that she was not well-suited for the home health aide position."  (Def. 56.1 ¶ 60; Savoiardo Decl. Ex. I at 2.)  Finally, the NYSDHR determined that the record suggested that People Care was "not aware of [McCoy's] mental disabilities," and that her application never made it to the review stage for convictions because People Care "had already made the decision not to hire [McCoy] for . . . nondiscriminatory reasons."  (Def. 56.1 ¶ 61; Savoiardo Decl. Ex. I at 2.)  McCoy's complaint was thus dismissed.  (Def. 56.1 ¶ 61; Savoiardo Decl. Ex. I at 2.)

The United States Equal Employment Opportunity Commission ("EEOC") also reviewed McCoy's claim to the extent it was brought pursuant to the Americans with Disabilities Act ("ADA") and adopted the findings of the NYSDHR.  (Savoiardo Decl. Ex. I at 4.)  She received a "right to sue" letter from the EEOC on March 9, 2011.  (Id.)

### B.    Procedural Background

McCoy, initially proceeding *pro se*, commenced this action on April 18, 2011 against People Care alleging that People Care violated the ADA in denying her employment.  McCoy

subsequently retained counsel.  Presently before the Court is People Care's motion for summary judgment.  In her opposition to People Care's motion, McCoy focuses solely on her claim arising from her arrest and conviction record; she does not oppose summary judgment on her claim arising from her mental disabilities.  For the following reasons, People Care's motion is granted.

## II.      Standard of Review

Summary judgment may be granted only where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the burden of showing that it is entitled to summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  In reviewing the record, the Court must assess the evidence in "the light most favorable to the [non-moving party]" and resolve all ambiguities and draw all reasonable inferences in its favor.  See Tufariello v. Long Island R.R. Co., 458 F.3d 80, 85 (2d Cir. 2006).  "[C]onclusory statements, conjecture, or speculation by the party resisting the motion, however, will not defeat summary judgment."  See Kulak v. City of N.Y., 88 F.3d 63, 71 (2d Cir. 1996).  The non-moving party must put forth more than a "scintilla of evidence;" it "must set forth specific facts showing that there is a genuine issue for trial."  Anderson, 477 U.S. at 248, 252.

## III.     Discussion

### A.      Disability Discrimination

McCoy brings a discrimination claim pursuant to the ADA alleging that she was discriminated against because of her mental disabilities.  Claims alleging disability discrimination in violation of the ADA are subject to the burden-shifting analysis established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  McMillan v. City of N.Y., 711 F.3d 120, 125 (2d Cir. 2013).  "To establish a prima facie case under the ADA,

a plaintiff must show by a preponderance of the evidence that: (1) [her] employer is subject to the ADA; (2) [s]he was disabled within the meaning of the ADA; (3) [s]he was otherwise qualified to perform the essential functions of [her] job, with or without reasonable accommodation; and (4) [s]he suffered adverse employment action because of [her] disability." Id. at 125 (internal quotation marks omitted).  If the plaintiff establishes a prima facie case, the burden shifts to the defendant to "articulate a legitimate, nondiscriminatory reason for its employment action."  Raytheon Co. v. Hernandez, 540 U.S. 44, 49 n.3 (2003).  "The employer need not persuade the court that it was motivated by the reason it provides; rather, it must simply articulate an explanation that, if true, would connote lawful behavior."  Greenway v. Buffalo Hilton Hotel, 143 F.3d 47, 52 (2d Cir. 1998) (omitted).  If the defendant carries that burden, the burden shifts back to the plaintiff to "offer[] evidence demonstrating that the employer's explanation is pretextual."  Raytheon, 540 U.S. at 49 n.3.

The complaint alleges that McCoy was not hired by People Care because of her bipolar disorder, depression and anxiety.  It is undisputed, however, as the NYSDHR found, that People Care had no knowledge of McCoy's mental disabilities at the time it decided not to hire her. While indicating on her application that she suffers from other medical conditions such as back pain and high blood pressure, she makes no mention of her mental health.  Moreover, there is nothing in the record to suggest that McCoy otherwise informed People Care of her disabilities. In order for a defendant to be liable for discrimination on the basis of disability, the defendant "must have had adequate knowledge of the plaintiff's disability."  Shaywitz v. Am. Bd. of Psychiatry & Neurology, 848 F. Supp. 2d 460, 467 (S.D.N.Y. 2012).  "Absent such proof, a plaintiff cannot meet [her] burden of demonstrating causation"—the fourth element of a prima facie case—because "'if [an employer] were truly unaware that . . . a disability existed, it would

be impossible for [an] [employment] decision to have been based, even in part, on [the plaintiff's] disability.'" Pacenza v. IBM Corp., No. 04 Civ. 5831 (PGG), 2009 WL 890060, at *10 (S.D.N.Y. Apr. 2, 2009) (quoting Raytheon, 540 U.S. at 55 n.7) (collecting cases); Goonewardena v. New York, No. 05 Civ. 8554 (PKC)(FM), 2008 WL 4090467, at *10 (S.D.N.Y. Aug. 26, 2008). Because McCoy has presented no evidence—and indeed, has not even argued—that People Care knew that she suffered from mental disabilities, she cannot establish a prima facie case of disability discrimination under the ADA and her claim is thus dismissed.

### B.    Arrest/Conviction

McCoy also claims that she was discriminated against because of her conviction and arrest record. Discrimination based on a prior conviction is not an ADA or Title VII claim. See Idlisan v. N.Y. State Dep't of Taxation & Finance, No. 12 Civ. 1787 (MAD/CFH), 2013 WL 2898050, at *4 (N.D.N.Y. June 13, 2013); Kravit v. Delta Air Lines, Inc., No. 92 Civ. 0038, 1992 WL 390236, at *2 (E.D.N.Y. Dec. 4, 1992). It is a claim under the New York State Human Rights Law ("NYSHRL") and New York City Human Rights Law ("NYCHRL").[2] In her complaint, McCoy appears to only be asserting a claim under the ADA, but in her opposition to People Care's motion, she "claims" that she was not hired due to her arrest and conviction record, citing N.Y. Exec. Law § 296(15). (Pl. Opp'n 4.) In light of McCoy's initial *pro se* status in this action, the Court will treat this claim as one under the NYSHRL. Because McCoy has already pursued this claim before the NYSDHR, however, it must be dismissed for lack of

---

[2]      New York Executive Law § 296(15) provides, in pertinent part, that "[i]t shall be an unlawful discriminatory practice for any . . . corporation . . . to deny any license or employment to any individual by reason of his or her having been convicted of one or more criminal offenses." Section 8-107(10) of the New York City Code provides, in pertinent part, that "[i]t shall be unlawful discriminatory practice for any person to deny any . . . employment to any person by reason of his or her having been convicted of one or more criminal offenses."

subject matter jurisdiction.[3]

The NYSHRL "contains an election[]of[]remedies provision that requires a plaintiff to choose between an administrative remedy and a judicial one." Stanley v. Guardian Sec. Servs., Inc., 800 F. Supp. 2d 550, 556 (S.D.N.Y. 2011) (citing N.Y. Exec. Law § 297(9)). As a result, "if a litigant files a discrimination complaint with the [State Division], [she] may not bring a subsequent judicial action based on the same incident," with limited exceptions not applicable here. Id. "Instead, dissatisfied litigant must appeal the decision of the State Division to the state [s]upreme [c]ourt." Id. (citing York v. Ass'n of Bar of City of N.Y., 286 F.3d 122, 127 (2d Cir. 2002)). "The election of remedies bar is jurisdictional." Higgins v. NYP Holdings, Inc., 836 F. Supp. 2d 182, 187 (S.D.N.Y. 2011) (citing Moodie v. Fed. Reserve Bank, 58 F.3d 879, 882 (2d Cir. 1995)).

The election of remedies bar requires dismissal of McCoy's NYSHRL claim that she was discriminated against on the basis of her arrest and conviction record. McCoy's complaint to the NYSDHR expressly included her discrimination claim and the NYSDHR concluded that there was "no probable cause" to believe that People Care engaged in unlawful discriminatory conduct. "[W]hen the [NYSDHR] has issued a finding of no probable cause . . . [a] plaintiff's claims . . . are barred by the law['s] election of remedies provision" as the claims have already been litigated before the administrative body. See Higgins, 836 F. Supp. 2d at 188 (quoting Guardino v. Vill of Scarsdale Police Dep't, No. 09 Civ. 8599, 2011 WL 4000999, at *2 (S.D.N.Y. Sept. 6, 2011)).

Even if the Court had jurisdiction over McCoy's NYSHRL claim, it would nonetheless be dismissed on its merits. Discrimination claims under the NYSHRL are subject to the same

---

[3]     Although People Care did not raise this argument in its motion for summary judgment, the Court may *sua sponte* dismiss a claim for lack of subject matter jurisdiction. See Lyndonville Sav. & Trust Co. v. Lussier, 211 F.3d 697, 700 (2d Cir. 2000).

McDonnell-Douglas burden-shifting analysis discussed above.  See Spiegel v. Schulmann, 604 F.3d 72, 80 (2d Cir. 2010).  To state a prima facie case of discrimination under the NYSHRL, McCoy must establish that: "(1) [s]he was a member of a protected class; (2) [s]he was competent to perform the job in question, or was performing the job duties satisfactorily; (3) [s]he suffered an adverse employment action; and (4) the action occurred under circumstances that give rise to an inference of discrimination."  Id.  McCoy is once again unable to satisfy the prima facie elements of her claim.  Although it is undisputed that People Care was made aware of her prior convictions through her application, there is no evidence in the record to suggest it chose not to hire her because of them.  People Care's practice of having the Senior Vice President review an application from an individual with a conviction is only triggered if the application is selected to proceed past the initial stage.  McCoy's application was rejected based on Salcedo's interactions with her and observation of her behavior while completing the application; indeed, because of that very behavior, her application never reached the later stage of the process.  Moreover, the contemporaneous notes taken by Salcedo regarding McCoy's application make no reference to McCoy's convictions but focus exclusively on her inability to follow instructions.  There is thus no evidence from which to infer that People Care's decision not to hire McCoy was due to her prior convictions.  McCoy has therefore failed to satisfy the prima facie elements of discrimination.

McCoy's claim would also fail—had she established a prima facie case of discrimination—because she has not provided any evidence that People Care's reasons for not hiring her were a pretext for discrimination.  See Spiegel, 604 F.3d at 80.  The record is clear that McCoy was not hired due to her behavior while completing her application.  Specifically, upon observing her demeanor, disruptive behavior and inability or unwillingness to follow directions,

Salcedo recommended that McCoy was not suitable for employment as a Home Health Aide, a job that requires the aide to provide care to a vulnerable population in an unsupervised setting. See, e.g., Nolley v. Swiss Reinsurance Am. Corp., 857 F. Supp. 2d 441, 457-58 (S.D.N.Y. 2012) (management's concerns over plaintiff's attitude and performance was a legitimate non-discriminatory reason for not promoting plaintiff); Weber v. Parfums Givenchy, Inc., 49 F. Supp. 2d 343, 357-58 (S.D.N.Y. 1999) (collecting cases that hold that the inability to get along with co-workers, refusal to obey or cooperate with other employees, and poor attitude are legitimate, non-discriminatory reasons for taking adverse action); Wrenn v. N.Y. State Office of Mental Health, 771 F. Supp. 594, 599 (S.D.N.Y. 1991) (misrepresentations on plaintiff's resume, plaintiff's demeanor during an interview and his inappropriate responses to questions were legitimate reasons for not hiring him).   This recommendation was further confirmed by Evmenenko's interactions with McCoy in the days after receiving the rejection letter, during which McCoy was belligerent and disruptive.

McCoy has failed to submit any evidence of pretext or otherwise refuting People Care's evidence that she was disruptive during the application process.   She asserts only that she "believe[s] [she] was not hired due to [her] arrest and conviction record," but such a conclusory and speculative assertion is insufficient to defeat summary judgment.   See Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 714 (2d Cir. 1996) (affirming summary judgment for defendant where plaintiff "put forward nothing other than conclusory allegations to suggest a causal relationship" between her protected activity and termination).   Accordingly, People Care is entitled to summary judgment on McCoy's discrimination claim.

**IV.    Conclusion**

For the foregoing reasons, People Care's motion for summary judgment is granted. The

Clerk of Court is respectfully directed to close the motion at Docket Number 25, enter judgment

in favor of Defendant and close this case.

SO ORDERED.

Dated:          September 20, 2013
                New York, New York

Ronnie Abrams
United States District Judge

12